UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

-----------------------------------------------------------------x
                         :

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| *ex rel*. JOHN H. DENENEA, JR., | :CIVIL ACTION NO. 07-2795 |
| | : |
| Plaintiff, | :SECTION: "J" (1) |
| | : |
| v. | :JUDGE: BARBIER |
| | : |
| ALLSTATE INSURANCE COMPANY, | :MAGISTRATE: SHUSHAN |
| | : |
| Defendant. | : |
| | : |

-----------------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF DEFENDANT ALLSTATE INSURANCE COMPANY'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(1), 12(h)(3), 31 U.S.C. §§ 3730(b)(5), and 3730(e)(4), and MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 9(b) and 12(b)(6).**

## TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 3

    A.  The National Flood Insurance Program And Hurricane Katrina .......................... 3

    B.  Public Allegations Of Fraud ................................................................................ 3

    C.  The Rigsby Lawsuit ............................................................................................. 7

    D.  The Branch Lawsuit ............................................................................................. 8

    E.  The Denenea Lawsuit .......................................................................................... 9

III.  ARGUMENT ................................................................................................... 11

    A.  Denenea Is Jurisdictionally Barred Twice Over By The First-to-File Rule ........ 11

        1.  The Fifth Circuit Has Already Decided That Rigsby Bars
            Subsequent Qui Tam Lawsuits ................................................................. 11

        2.  Branch Also Bars Denenea ...................................................................... 13

        3.  The First-to-File Rule Continues To Bar Denenea Despite
            Allstate's Dismissal From Rigsby And Branch ......................................... 13

    B.  The Court Lacks Subject Matter Jurisdiction Because Denenea Is Based
        On Public Disclosures And Denenea Is Not An Original Source ...................... 16

        1.  The Fraudulent Scheme Alleged By Denenea Was Publicly
            Disclosed Long Before Denenea Was Filed ............................................. 17

        2.  Denenea Is "Based Upon" Publicly Disclosed Allegations ..................... 18

        3.  Denenea Fails To Allege He Is An Original Source ................................. 19

    C.  The First Amended Complaint Does Not State A Claim For Which Relief
        Can Be Granted ................................................................................................ 22

IV.  CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
129 S.Ct. 1937 (2009) ..................................................................................3, 21, 22

*Fiore v. First American Title Ins. Co.,*
No. 05-CV-474, 2005 WL 3434074 (S.D. Ill. Dec. 13, 2005) .........................13, 24

*Glaser v. Wound Care Consultants, Inc.,*
570 F.3d 907 (7th Cir. 2009) .........................................................................16, 18

*Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson,*
130 S.Ct. 1396 (2010) ...........................................................................................16

*In re Natural Gas Royalties Qui Tam Litigation,*
467 F. Supp. 2d 1117 (D. Wyo. 2006) ........................................................... passim

*In re Pharmaceutical Industry Average Wholesale Price Litigation,*
538 F. Supp. 2d 367 (D. Mass. 2008) .....................................................................21

*Kennard v. Comstock Resources, Inc.,*
363 F.3d 1039 (10th Cir. 2004) .............................................................................20

*Pulphus v. Sullivan,*
No. 02 C 5794, 2003 WL 1964333 (N.D. Ill. Apr. 28, 2003)...................................24

*Rockwell Int'l Corp. v. United States,*
549 U.S. 457 (2007).........................................................................................16, 19

*Stockman v. Fed. Election Comm'n,*
138 F.3d 144 (5th Cir. 1998) .................................................................................22

*United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co., et al.,*
No. 2:06-cv-4091, Dkt. 49 (E.D. La. filed June 22, 2007) ("Branch FAC")............9

*United States ex rel. Branch Consultants v. Allstate Ins. Co., et al.,*
560 F.3d 371 (5th Cir. 2009) ......................................................................... passim

*United States ex rel. Branch Consultants v. Allstate Ins. Co., et al.,*
668 F. Supp. 2d 780 (E.D. La. 2009)....................................................9, 17, 18, 19

*United States ex rel. Chovanec v. Apria Healthcare Group Inc.,*
606 F.3d 361 (7th Cir. 2010) .................................................................................14

**TABLE OF AUTHORITIES**
(continued)

Page

*United States ex rel. Davis v. Lockheed Martin Corp.*,
No. 4:09-CV-645-Y, 2010 WL 3239228 (N.D. Tex. Aug. 16, 2010) ...................................25

*United States ex rel. Doe v. Doe*,
960 F.2d 319 (2d Cir. 1992).....................................................................................................18

*United States ex rel. Dow v. Dow Chemical Co.*,
343 F.3d 325 (5th Cir. 2003) ..................................................................................................22

*United States ex rel. Findley v. FPC-Boron Employees' Club*,
105 F.3d 675 (D.C. Cir. 1997)..................................................................................................16

*United States ex rel. Gear v. Emergency Med. Assoc. of Illinois, Inc.*,
436 F.3d 726 (7th Cir. 2006) ...................................................................................................19

*United States ex rel. Godfrey v. KBR, Inc.*,
360 Fed. Appx. 407 (4th Cir. 2010)..........................................................................................25

*United States ex rel. Grayson v. Advanced Management Technology, Inc.*,
221 F.3d 580 (4th Cir. 2000) ...................................................................................................21

*United States ex rel. Grubbs v. Kanneganti*,
565 F.3d 180 (5th Cir. 2009) ................................................................................3, 22, 23, 24

*United States ex rel. Grynberg v. Koch Gateway Pipeline Co.*,
390 F.3d 1276 (10th Cir. 2004) .........................................................................................11, 14

*United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*,
190 F.3d 1156 (10th Cir. 1999) ...............................................................................................20

*United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*,
318 F.3d 214 (D.C. Cir. 2003).................................................................................................12

*United States ex rel. Holmes v. Consumer Ins. Group*,
318 F.3d 1199 (10th Cir. 2003) ...............................................................................................15

*United States ex rel. Koerner v. Crescent City E.M.S., Inc.*,
946 F. Supp. 447 (E.D. La. 1996).............................................................................................18

*United States ex rel. LaCorte v. Smithkline Beecham Clinical Labs., Inc.*,
149 F. 3d 227 (3d Cir. 1998)...........................................................................1, 11, 13, 16

*United States ex rel. Longhi v. Lithium Power Techs.*,
575 F.3d 458 (5th Cir. 2009) ...................................................................................................23

**TABLE OF AUTHORITIES**
(continued)

Page

*United States ex rel. Lujan v. Hughes Aircraft Co.*,
   243 F.3d 1181 (9th Cir. 2001) ......................................................................11, 14

*United States ex rel. McKenzie v. Bellsouth Telecomm., Inc.*,
   123 F.3d 935 (6th Cir. 1997) ........................................................................18

*United States ex rel. Pritsker v. Sodexho, Inc.*,
   No. 03-6003, 2009 WL 579380 (E.D. Pa. Mar. 6, 2009) ......................................20

*United States ex rel. Ramseyer v. Century Healthcare Corp.*,
   90 F.3d 1514 (10th Cir. 1996) ......................................................................17

*United States ex rel. Reagan v. East Tex. Med. Cent. Reg'l Healthcare Sys.*,
   384 F.3d 168 (5th Cir. 2004) ...........................................................1, 11, 19, 20

*United States ex rel. Russell v. Epic Healthcare Management Group*,
   193 F.3d 304 (5th Cir. 1999) ........................................................................22

*United States ex rel. Smith v. Yale-New Haven Hosp.*,
   411 F. Supp. 2d 64 (D. Conn. 2005) ................................................................15

*United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*,
   944 F.2d 1149 (3d Cir. 1991) ........................................................................21

*Wagemann v. Doctor's Hospital of Slidell*,
   No. 09-3506, 2010 WL 3168087 (E.D. La. Aug. 6, 2010) ................................23, 24


**STATUTES AND RULES**

31 U.S.C. § 3730(b)(5) ...................................................................1, 10, 11, 15

31 U.S.C. § 3730(e)(4).....................................................................2, 16, 17, 21

31 U.S.C. § 3730(e)(4)(A) ...............................................................16, 17, 19

31 U.S.C. § 3730(e)(4)(B) ...............................................................19, 20, 21

Dept. of Homeland Security Appropriations Act of 2007, Pub. L. No. 109-295, 120 stat.
   1355 (2007).............................................................................................5

Fed. R. Civ. P. 8............................................................................................22

**TABLE OF AUTHORITIES**
(continued)

**Page**

Fed. R. Civ. P. 9(b) ........................................................................................................ passim

FED. R. CIV. P. 12(b)(6) ..........................................................................................................22

REGULATIONS

44 C.F.R. Part 62, Appendix ........................................................................................................3

44 C.F.R. § 61.1 ........................................................................................................................3

44 C.F.R. § 62.23 ......................................................................................................................3

44 C.F.R. § 78.14 ......................................................................................................................3

LEGISLATIVE MATERIAL

109th Cong. (2006) (statement of J. Robert Hunter, Dir. Of Ins., Consumer Fed'n of
America) ................................................................................................................................4

152 CONG. REC. H4589-02 ....................................................................................................5

152 CONG REC. S7632-04,
2006 WL 1983078 (2006) ....................................................................................................5

H.R. Rep. No. 109-530 (2006) ................................................................................................5

*National Flood Insurance Program: Hearing Before the S. Comm. on Banking, Housing,
and Urban Affairs*, 109th Cong. (2005), 2005 WL 2661294 (RJN 22) ....................................4

*Waste, Fraud and Abuse in the Aftermath of Hurricane Katrina: Hearing Before the S.
Comm. on Investigations of the H. Comm. On Homeland Security*, 109th Cong. 33
(2006) ..................................................................................................................................4

OTHER AUTHORITIES

Anita Lee, *Taylor Sees Fraud in Insurer Denials: He Suspects NFIP, Taxpayers Being
Cheated*, THE SUN HERALD (Biloxi, Miss.), June 24, 2006 ........................................................5

Bill Swindell, *Lott, Taylor Continue Quest to Probe Flood Insurance Practices* ......................5, 8

**TABLE OF AUTHORITIES**
**(continued)**

Page

Gov't Accountability Office, *Nat'l Flood Ins. Program: New Processes Aided Hurricane Katrina Claims Handling, But FEMA's Oversight Should Be Improved* (Dec. 15, 2006) .................................................................................................................................3

Rebecca Mowbray, *Review To Look At Wind vs. Water: Label of Damage By Insurers Is Key*, NEW ORLEANS TIMES-PICAYUNE, May 19, 2006.............................................................5

## I.   __INTRODUCTION__

This case is the *third*—and last filed—False Claims Act ("FCA") case brought by a *qui tam* relator alleging that Allstate Insurance Company ("Allstate") engaged in a scheme to defraud the government in the aftermath of Hurricane Katrina.  Relator John H. Denenea, Jr. claims that Allstate mischaracterized insurance claims for losses caused by wind (which Allstate must pay for under homeowners insurance policies) as losses caused by flood (which the government must pay for under the National Flood Insurance Program).  These allegations repeat both the exact same allegations that have already been made by two different *qui tam* relators, as well as allegations publicly disclosed in the press, Congressional hearings, and other litigation many months before this lawsuit was filed.  The FCA unambiguously prohibits such "parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud."  *United States ex rel. Reagan v. East Tex. Med. Cent. Reg'l Healthcare Sys.*, 384 F.3d 168, 174 (5th Cir. 2004).

The FCA's *qui tam* provisions impose strict jurisdictional limits on the circumstances in which private citizens, called relators, may pursue claims for fraud on behalf of the United States government.  In this case, the First Amended Complaint ("FAC") filed by Denenea runs afoul of not one, but both, of the jurisdictional limits imposed by the FCA on *qui tam* suits.  Additionally, and apart from those fundamental flaws, it fails to state a claim for which relief can be granted.

*First,* the FAC is barred by the FCA's first-to-file rule, which denies courts jurisdiction over any *qui tam* action that asserts the same material allegations of fraud as a *qui tam* action that was filed first.  31 U.S.C. § 3730(b)(5).  By design, the first-to-file rule both creates a race to the courthouse to incentivize relators to be the first to alert the government to the alleged wrongdoing, and prevents duplicative follow-on litigation.  *United States ex rel. LaCorte v. Smithkline Beecham Clinical Labs., Inc.*, 149 F. 3d 227, 234 (3d Cir. 1998).  Denenea has lost

- 1 -

this race—twice.  In *United States ex rel. Rigsby v. State Farm Ins. Co.*, No. 1:06-cv-433, Dkt. 1 (S.D. Miss. filed Apr. 26, 2006) (RJN 16)[1] ("*Rigsby*"), which was filed over a year before Denenea filed his complaint, the relators alleged that Allstate and other insurance companies fraudulently inflated flood damage claims and understated wind claims in order to shift the cost of losses to the government.  Those same allegations were made again in *United States ex rel. Branch Consultants v. Allstate Ins. Co., et al.*, No. 2:06-cv-4091, Dkt. 1 (E.D. La. filed Aug. 2, 2006) (RJN 8) ("*Branch*"), which was filed nine months before Denenea's initial complaint. *See United States ex rel. Branch Consultants v. Allstate Ins. Co., et al.*, 560 F.3d 371 (5th Cir. 2009). Significantly, the Fifth Circuit has already affirmed the trial court's ruling that *Branch*, as the second-filed case, is barred by *Rigsby*.  That holding mandates that *Denenea*, which is the third case to allege the same fraudulent scheme, is plainly barred by the FCA's first-to-file rule.

**Second**, the FAC is barred by the FCA's public disclosure rule, which denies jurisdiction over any *qui tam* action based upon prior public disclosures unless the relator can show he is an "original source" who has "direct and independent knowledge" of the allegations in his complaint.  31 U.S.C. § 3730(e)(4)(B).  Far from meeting these requirements, Denenea has merely compiled and repeated allegations made by others, which was public knowledge long before this case was filed.  Denenea adds nothing new to allegations already made by public officials, reporters, and litigants.  In fact, Denenea admits that he can only allege a fraudulent scheme on "information and belief" rather than from "direct and independent knowledge," as required to show he is an original source.   Because Denenea does not—and cannot—allege that he is an original source of his allegations, this Court lacks jurisdiction over the FAC.

**Finally**, the FAC fails to state a cause of action for which relief can be granted.  The FAC

---

[1] Allstate files concurrently with this motion its Request for Judicial Notice.  References to exhibits to that Request for Judicial Notice are denoted as "RJN __", followed by the exhibit number.

contains nothing more than vague and conclusory allegations about Allstate's purported fraud, which "are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009), and offer none of the detail or specificity required by Rule 9(b)[2] for FCA claims. *See United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).

## II.   BACKGROUND

### A.   The National Flood Insurance Program And Hurricane Katrina

The National Flood Insurance Program (NFIP) is a government program that provides flood insurance to homeowners due to the general lack of flood insurance in the private insurance market. *See* 44 C.F.R. §§ 61.1 - 78.14. Under the Write-Your-Own ("WYO") program, commercial insurance companies ("WYO Companies") such as Allstate sell and administer NFIP policies, which are underwritten by the government. 44 C.F.R. § 62.23.

In August 2005, Hurricane Katrina struck the Gulf Coast, causing unprecedented damage. WYO Companies faced approximately 135,000 claims for coverage for flood losses from Louisiana alone. *See* Gov't Accountability Office, *Nat'l Flood Ins. Program: New Processes Aided Hurricane Katrina Claims Handling, But FEMA's Oversight Should Be Improved*, GAO-07-169 (Dec. 15, 2006), at 6, *available at* http://www.gao.gov/new.items/d07169.pdf. (RJN 31). As required by the WYO program, WYO Companies investigated, adjusted, and settled losses arising from NFIP policies. *See* 44 C.F.R. Part 62, Appendix A, Art. II(F).

### B.   Public Allegations Of Fraud

In the aftermath of Hurricane Katrina—and several months before Denenea filed his *qui tam* action on May 4, 2007—various public officials, litigants, and the media began questioning the WYO Companies' handling of flood claims, making the same allegations later made in *Denenea*. Specifically, they alleged that insurers who provided both NFIP policies and

---

[2] Unless otherwise noted, all references to "Rules" are to the Federal Rules of Civil Procedure.

homeowners insurance policies (which covered wind damage) on the same properties intentionally overstated the amount of damage due to flooding and understated the damage due to wind so that they could shift payment for losses from themselves onto the government.

For example, on October 18, 2005—more than a year before *Denenea* was filed— J. Robert Hunter, a former Federal Insurance Administrator who ran the NFIP, testified before the Senate Banking, Housing, and Urban Affairs Committee that there was a "conflict of interest" for WYO Companies: "If it's a flood damage, they don't pay anything. . . . If it's a wind damage, it affects their bottom line.  There are serious questions about where wind stops and flood start[s]."  *National Flood Insurance Program: Hearing Before the S. Comm. on Banking, Housing, and Urban Affairs*, 109th Cong. (2005) (statement of J. Robert Hunter, Dir. Of Ins., Consumer Fed'n of America), 2005 WL 2661294, at 33 (RJN 22).  Hunter again raised this concern before the same committee on February 2, 2006 and urged that the government conduct audits "so that any tendency of the insurers to diminish their wind losses for their own benefit is stopped quickly."  *National Flood Insurance Program: Hearing Before the S. Comm. on Banking, Housing, and Urban Affairs*, 109th Cong. (2006) (statement of J. Robert Hunter, Dir. Of Ins., Consumer Fed'n of America), 2006 WLNR 1848600, at 7 (RJN 23).

On June 14, 2006, United States Representative Gene Taylor accused WYO Companies of "the biggest fraud of all in Hurricane Katrina," claiming at a House subcommittee hearing that in "thousands of instances," claims adjusters ignored all evidence of wind damage "and assigned all of the claim to flooding" such that "claims that should have been paid by State Farm, by Allstate, by Nationwide, by other companies out there were stuck to the taxpayer."  *Waste, Fraud and Abuse in the Aftermath of Hurricane Katrina: Hearing Before the S. Comm. on Investigations of the H. Comm. On Homeland Security*, 109th Cong. 33 (2006) (statement of

- 4 -

Rep. Taylor) (RJN 24).  On June 27, 2006, he testified, "The biggest fraud [after Hurricane Katrina] occurred at the corporate level where the insurance industry made a corporate decision to, whenever possible, blame flooding every time and stick the taxpayers with bills that they should have paid."  152 CONG. REC. H4589-02, at 31 (statement of Rep. Taylor) (RJN 25).

Representative Taylor also proposed legislation calling for an investigation of the WYO Companies' adjustment of Hurricane Katrina claims.  H.R. Rep. No. 109-530, at *7-8 (2006) (RJN 26).  On July 13, 2006, the Senate passed such legislation, providing that an investigation would be conducted to determine "whether, and to what extent . . . insurers . . . improperly attributed damages from [Hurricane Katrina] to flooding covered under the national flood insurance program rather than to windstorms covered under coverage provided by such insurers . . . ."  Dept. of Homeland Security Appropriations Act of 2007, Pub. L. No. 109-295, 120 stat. 1355 (2007); 152 CONG REC. S7632-04, 2006 WL 1983078 at *S7633 (2006) (RJN 27).  By 2006, then, the government was well aware of the exact fraud alleged in *Denenea* and, well before this action was filed, had called for an investigation into those very allegations.

There was also a flurry of news reports discussing allegations of insurer fraud on the NFIP.  On May 19, 2006—almost one year before *Denenea* was filed—an article in *The New Orleans Times-Picayune* discussed the government's investigation and the WYO Companies' incentives to inflate the amount of flood damages claimed.  Rebecca Mowbray, *Review To Look At Wind vs. Water: Label of Damage By Insurers Is Key*, NEW ORLEANS TIMES-PICAYUNE, May 19, 2006, at 1 (RJN 28).  Other articles reported Representative Taylor's actions, publicizing concerns that the insurance companies were using the NFIP to avoid paying homeowners under their own policies covering wind damage.  *See, e.g.*, Anita Lee, *Taylor Sees Fraud in Insurer Denials: He Suspects NFIP, Taxpayers Being Cheated*, THE SUN HERALD (Biloxi, Miss.), June

24, 2006, at 1 (RJN 29); Bill Swindell, *Lott, Taylor Continue Quest to Probe Flood Insurance Practices*, CONGRESS DAILY, July 13, 2006, at 1 (RJN 30).

Civil litigants also pursued these allegations in court long before Denenea did.  On September 20, 2005—more than a year and a half before Denenea filed this action—certain plaintiffs sued Allstate and other insurers, claiming that those insurers, in order to pass costs to the NFIP, had wrongfully denied payment of homeowners claims by claiming that their damages were due to flooding.  Complaint, *Cox v. Nationwide Mut. Ins. Co.*, No. 1:05-cv-436, Dkt. 1 (S.D. Miss. filed Sept. 20, 2005) (RJN 20).  Another lawsuit was filed on May 16, 2006, alleging similar claims against State Farm.  Complaint, *Fowler v. State Farm Fire & Cas. Co.*, No. 1:06-cv-489, Dkt. 1 (S.D. Miss. filed May 16, 2006) (RJN 21).

In fact, as stated in the FAC, Denenea himself represented litigants filing similar claims against Allstate, and has based this lawsuit on information gathered in the course of representing those insureds.  FAC ¶ 19.  For example, in *Weiss v. Allstate Insurance Company*, a case filed on July 17, 2006, Denenea represented a couple who alleged that Allstate mischaracterized wind damage as flood damage, fabricating insurance forms to claim the limits of the government-backed flood insurance policy while refusing to pay for wind damage under the Allstate homeowners policy covering the property.  Complaint, *Weiss v. Allstate Ins. Co.*, No. 2:06-cv-3774, Dkt. 1 (E.D. La. filed July 17, 2006) (RJN 1); Memorandum In Opposition To Allstate Insurance Company's Motion For Summary Judgment, *Weiss v. Allstate Ins. Co.*, No. 2:06-cv-3774, Dkt. 55, at 3-6 (E.D. La. filed Feb. 27, 2007) (RJN 2); Allstate Insurance Company's Reply Memorandum In Support Of Motion For Summary Judgment, *Weiss v. Allstate Ins. Co.*, No. 2:06-cv-3774, Dkt. 90, at 3-4 (E.D. La. filed Mar. 16, 2007) (RJN 3).  Similarly, in *Shearman v. Allstate Insurance Company* and *Majoue v. Allstate Insurance Company*, Denenea

represented plaintiffs who had received flood insurance payments but claimed that they were owed payment under Allstate's homeowners policies because wind (not flood) allegedly caused the total destruction of their properties.  Complaint, *Shearman v. Allstate Ins. Co.,* No. 2:06-cv-2879, Dkt. 1 (E.D. La. filed June 1, 2006) (RJN 4); Allstate Insurance Company's Memorandum In Support Of Motion For Partial Summary Judgment, *Shearman v. Allstate Ins. Co.*, No. 2:06-cv-2879, Dkt. 59-1, at 2-3 (E.D. La. filed Aug. 23, 2007) (RJN 5); Complaint, *Majoue v. Allstate Ins. Co.*, No. 2:06-cv-4271, Dkt. 1 (E.D. La. filed Aug. 14, 2006) (RJN 6); Memorandum In Opposition To Allstate's Motion For Partial Summary Judgment, *Majoue v. Allstate Ins. Co.*, No. 2:06-cv-4271, Dkt. 30 at 2-4 (E.D. La. filed July 17, 2007) (RJN 7).

### C.    The *Rigsby* Lawsuit

On April 26, 2006—over one year before *Denenea* was filed—different *qui tam* relators filed a lawsuit in the Southern District of Mississippi against Allstate and other WYO Companies, captioned *United States ex rel. Rigsby v. State Farm Ins. Co.*, *et al*., No. 1: 06-cv-433, Dkt. 1 (S.D. Miss. filed Apr. 26, 2006).  (RJN 16).  That *qui tam* action was amended on May 22, 2007 ("*Rigsby* FAC") and ordered unsealed on August 1, 2007.[3]  Order Unsealing Case, *United States ex rel. Rigsby v. State Farm Ins. Co.*, No. 1: 06-cv-433, Dkt. 25 (S.D. Miss. filed Aug. 1, 2007) (RJN 18); First Amended Complaint, *United States ex rel. Rigsby v. State Farm Ins. Co.*, No. 1: 06-cv-433, Dkt. 16 (S.D. Miss. filed May 22, 2007) (RJN 17).

Like *Denenea*, *Rigsby* alleged that the defendant insurance companies, including Allstate, "made a corporate decision to misdirect and misallocate claims from those of hurricane coverage (which a company would be required to pay from its reserves or reinsurance) to flood claims that could be submitted and paid directly from the United States Treasury."  *Rigsby* FAC ¶ 56.

---

[3] *Rigsby*'s amended complaint was substantially identical to the original complaint with respect to Allstate.

*Rigsby* also alleged that adjusters were instructed to "hit limits" on flood coverage, regardless of actual damage from flood. *Id.* at 59-62. Like *Denenea*, *Rigsby* identified a few specific instances of allegedly inflated flood claims. *Id.* at ¶¶ 65-77.

After requesting two extensions of the seal period and investigating the relators' allegations for nineteen months, the government declined to intervene in *Rigsby*. Order Denying Motion to Lift Stay, *United States ex rel. Rigsby v. State Farm Ins. Co.*, No. 1:06-cv-433, Dkt. 52 (S.D. Miss. filed Dec. 4, 2007) (RJN 19). On June 16, 2008, at the request of the relators and with the government's consent, the district court voluntarily dismissed Allstate from the action.

### D.      The *Branch* Lawsuit

On August 2, 2006—approximately nine months before *Denenea* was filed—another *qui tam* action was filed against Allstate and other WYO Companies, alleging substantively identical claims as those previously made in *Rigsby* and later made in *Denenea*. *United States ex rel. Branch Consultants v. Allstate Ins. Co., et al.*, No. 06-4091 (E.D. La. filed Aug. 2, 2006) (RJN 8). After nine months of investigation, the government declined to intervene in *Branch*. Notice Of The United States That It Is Not Intervening At This Time, *United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co., et al.*, No. 2:06-cv-4091, Dkt. 36 (E.D. La. filed May 18, 2007) (RJN 9). *Branch* was ordered unsealed on May 22, 2007 and amended on June 22, 2007. Order Unsealing Complaint, *United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co., et al.*, No. 2:06-cv-4091, Dkt. 25 (E.D. La. filed May 22, 2007) (RJN 10); First Amended Complaint, *United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co., et al.*, No. 2:06-cv-4091, Dkt. 49 (E.D. La. filed June 22, 2007) ("*Branch* FAC").

As in *Rigsby*, *Branch* alleged that Allstate and other insurance companies acted "systematically" to "defraud[] NFIP by misattributing wind damage and other non-flood losses

- 8 -

to the [NFIP] policies" so that they would not be obligated to pay those losses. *Branch* FAC at ¶¶ 3-5, 17.  As did the *Rigsby* relators, Branch identified specific properties for which insurers allegedly overstated flood damage, providing information on the property, the amount of flood damage suffered, and the amount of flood damage claimed. *Id.* at ¶¶ 21, 23, 25, 27, 29-31.

On October 17, 2007, the district court held that *Branch* was barred by the FCA's first-to-file rule based on the earlier-filed *Rigsby* action.  Dismissal Order, *United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co., et al.*, No. 2:06-cv-4091, Dkt. 191 (E.D. La. filed Oct. 17, 2007) (RJN 12).  On appeal, the Fifth Circuit affirmed the district court's dismissal as to defendants Allstate and State Farm on the grounds that the first-filed *Rigsby* suit barred Branch from proceeding, remanding the case as to the remaining defendants. *United States ex rel. Branch Consultants v. Allstate Ins. Co., et al.*, 560 F.3d 371 (5th Cir. 2009).  On remand, the district court considered a subset of the public disclosures catalogued above and ruled that, for the purposes of the FCA's public disclosure bar, Branch's allegations had in fact been publicly disclosed before Branch filed suit. *United States ex rel. Branch Consultants v. Allstate Ins. Co., et al.*, 668 F. Supp. 2d 780, 795 (E.D. La. 2009).  However, the court found that Branch adequately alleged that it was an original source of its allegations.[4] *Id.* at 802-03.  On August 13, 2010, Branch filed a Second Amended Complaint ("SAC") that reinstates Allstate as a defendant on the ground that *Rigsby* was purportedly a sham lawsuit as to Allstate.  Allstate has moved to dismiss *Branch*.[5]

E.     **The *Denenea* Lawsuit**

Denenea filed the present *qui tam* action on May 4, 2007, over a year after allegations of

---

[4] Allstate, which had been dismissed from *Branch* prior to Judge Vance's ruling on original source, maintains its position that Branch did not adequately plead that it was an original source of its allegations.  In any case, Denenea's distinct and conclusory allegations are inadequate to establish his original source status, even under the standard applied by Judge Vance in *Branch*.
[5] Allstate's motion is currently set for hearing before Judge Vance on November 19, 2010.

insurer fraud upon the NFIP first began to surface and *Rigsby* was filed, and several months after *Branch* was filed.  Complaint, *Denenea v. Allstate Ins. Co.*, No. 2:07-cv-2795, Dkt. 1 (E.D. La. filed May. 4, 2007) (RJN 13).  On November 12, 2009, Denenea filed an amended complaint ("FAC").  First Amended Complaint, *Denenea v. Allstate Ins. Co.*, No. 2:07-cv-2795, Dkt. 22 (E.D. La. filed Nov. 12, 2009) (RJN 14).  The FAC differs from the original complaint only in that it identifies four additional properties and a few additional document types implicated in Allstate's alleged fraud, and explicitly alleges a fraudulent "scheme."  FAC ¶¶ 8, 9, 11, 13-19.

The allegations in *Denenea* parrot those previously disclosed elsewhere.  As alleged by others, including the *Rigsby* and *Branch* relators, *Denenea* alleges that Allstate engaged in a fraudulent scheme to inflate flood claims and costs and understate wind claims and costs in order to shift losses onto the government.  FAC ¶¶ 13-14.  In *Denenea*'s words, Allstate "knowingly and systematically fabricated and falsified documents . . . which substantially inflated the amounts of these insureds' flood insurance claims at the expense of the Government, while at the same time enriching Allstate by substantially deflating the amounts of these insureds' homeowners insurance claims" and "knowingly estimated [two homeowners'] losses utilizing substantially inflated replacement cost values for items comprising their flood insurance claims at the expense of the Government, while at the same time enriching Allstate by substantially deflating replacement cost values for identical items comprising their homeowners insurance claims."  *Id.* ¶¶ 11-12.

On September 17, 2010, after three years of investigation, the government declined to intervene in *Denenea* after learning that Branch had received leave to amend to reinstate Allstate as a defendant.   The United States' Notice That It Is Not Intervening, *Denenea v. Allstate Ins. Co.*, No. 2:07-cv-2795, Dkt. 29 (E.D. La. filed Sept. 17, 2010) (RJN 15).  Recognizing that "the

- 10 -

question of whether the jurisdiction bar under 31 U.S.C. § 3730(b)(5) is triggered as to either the relator in *Denenea* or the relator in *Branch Consultants*", the government moved the court to unseal all filings in *Denenea*, excepting government filings regarding extensions and partial lifting of the seal period.  *Id.* at 3

## III.   ARGUMENT

### A.   *Denenea* Is Jurisdictionally Barred Twice Over By The First-to-File Rule

#### 1.   The Fifth Circuit Has Already Decided That *Rigsby* Bars Subsequent *Qui Tam* Lawsuits

The FCA seeks to balance "promoting private citizen involvement in exposing fraud against the government" against "preventing parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud."  *Reagan*, 384 F.3d at 174.  The first-to-file rule, which bars a relator from bringing "a related action based on the facts underlying [a] pending action", 31 U.S.C. § 3730(b)(5), provides incentives for whistle-blowers to report fraud promptly and to alert the government to the essential facts of a fraud.  *See United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1188 (9th Cir. 2001); *LaCorte*, 149 F. 3d at 234.  Once the government "knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds."  *LaCorte*, 149 F.3d at 234.  As such, subsequent *qui tam* actions are duplicative and unnecessary.  *See United States ex rel. Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 (10th Cir. 2004) (citation omitted).  It is irrelevant whether the later-filed action is based on independently obtained information: so long as it "alleges the same ***material or essential elements*** of fraud", the first-to-file bar applies.  *United States ex rel. Branch Consultants v. Allstate Ins. Co., et al.*, 560 F.3d 371, 378 (5th Cir. 2009) (emphasis added).

Applying these rules, the Fifth Circuit found that *Rigsby* barred Branch's subsequent lawsuit because like *Rigsby*, *Branch* alleged that Allstate defrauded the government by shifting

wind losses to flood losses.  *Id.* at 379.  The Fifth Circuit's ruling that *Rigsby* sufficed to bar Branch's lawsuit clearly applies to bar Denenea's lawsuit, which was filed ***after*** *Branch.*  Like *Branch, Denenea* alleges the same "material or essential elements of fraud" as *Rigsby*, namely that: 1) Allstate knowingly and fraudulently overstated flood damages to the government and understated wind damages to cause the government to pay for losses that should have been covered by Allstate, FAC ¶¶ 11-14; *Rigsby* FAC ¶¶ 28, 33, 59-62; *Branch* FAC ¶¶ 4, 5, 17; 2) Allstate made false claims for payment that overstated flood damages and submitted false records in support of those claims, FAC ¶ 15-16; *Rigsby* FAC ¶¶ 81-89; *Branch* FAC ¶¶ 21, 23, 25, 27, 29-31; and 3) Allstate's acts were systematic and comprised an overall scheme of fraud. FAC ¶ 13-14; *Rigsby* FAC ¶ 33; *Branch* FAC ¶ 5, 17.

  *Denenea* includes ***no*** material allegations that differ in substance from those previously disclosed in *Rigsby* and then *Branch.*  That *Denenea* purports to identify other examples of the alleged scheme is irrelevant.  Relators cannot avoid the first-to-file bar by alleging "additional instances of fraud occurring in other geographic locations" or by adding varying factual details to a previously disclosed fraud.  *Branch*, 560 F.3d at 378; *see also United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 218 (D.C. Cir. 2003) (barring later-filed suit adding details that were "merely variations on the fraud" alleged in earlier-filed suit).  Indeed, the Fifth Circuit *expressly rejected* Branch's argument that the first-to-file bar should not operate because, unlike *Rigsby*, Branch provided explicit detail and specific examples about Allstate's alleged fraud.  *Branch*, 560 F.3d at 379 ("recogniz[ing] that only skeletal allegations are raised against Allstate in [*Rigsby*]," but finding them sufficient to bar *Branch*).

  The Fifth Circuit's holding that *Rigsby* was the first-filed suit is squarely on point and binding.  For the same reasons that the Fifth Circuit has found that *Rigsby* bars *Branch*, *Rigsby*

necessarily bars *Denenea* as well.

### 2.      Branch Also Bars Denenea

Not only is Denenea's lawsuit precluded by *Rigsby*, it is also precluded by *Branch*.  Like *Rigsby*, *Branch* was filed before *Denenea*, and makes the same material allegations of a fraudulent scheme by Allstate to shift wind losses to flood losses in order to minimize its payments under homeowners policies.  Branch has recently amended its complaint to reinstate Allstate as a defendant, arguing that *Rigsby* was a sham and thus should not bar Branch's complaint.  Even if Branch is correct—which Allstate disputes—Branch's lawsuit was filed before *Denenea* and bars *Denenea* even if *Rigsby* does not.  This Court need not determine whether *Branch* is barred by *Rigsby* because *both* complaints were pending when *Denenea* was filed and therefore one or the other—or both—divest the Court of jurisdiction over this case.  *See LaCorte*, 149 F.3d at 237 (noting that the status of two earlier-filed complaints vis-à-vis each other "is irrelevant" to the court's consideration of later-filed claims of the relator before it).

### 3.      The First-to-File Rule Continues To Bar *Denenea* Despite Allstate's Dismissal From *Rigsby* And *Branch*

Denenea may attempt to argue that *Rigsby* and *Branch* should not preclude this action because Allstate was dismissed from both of those cases.  Allstate's dismissal from those earlier-filed cases does not, however, prevent the first-to-file rule from operating.

***First***, *Branch* is still pending against Allstate, which was reinstated as a defendant in Branch's SAC.  Allstate has moved to dismiss the SAC, but if that motion is denied, Branch's case against Allstate will proceed.  After having been dismissed from the earlier *Rigsby* case, Allstate is now litigating parallel proceedings in *Branch* and *Denenea*, which both allege the exact same fraud.  The first-to-file rule prohibits this kind of duplicative litigation.  If Allstate wins its motion to dismiss in *Branch*, *Rigsby* will bar *Branch* and by the same logic bar *Denenea*;

- 13 -

if Allstate loses its motion to dismiss in *Branch*, only *Branch* or *Denenea* can proceed, and *Branch* was filed first. Because both the Rigsbys and Branch beat Denenea to the courthouse, *Denenea* is barred no matter what the result of Allstate's motion to dismiss in *Branch.*

**Second**, in *Branch,* the Fifth Circuit held that the first-to-file rule bars later-filed suits, even where first-filed action was dismissed after the later-filed action was filed. Thus, in *Branch*, the Fifth Circuit held that *Rigsby* barred the later-filed *Branch* action against Allstate, even though the court knew that Allstate had already been voluntarily dismissed from *Rigsby* and expressly considered that fact before issuing its decision.[6] *Branch*, 560 F.3d at 379; *see also* Oral Argument Recordings, *United States ex rel. Branch Consultants v. Allstate Ins. Co., et. al.*, No. 07-31191, 5:40 - 5:54, 6:50 - 7:16, 8:05 - 8:35 (Nov. 3, 2008), *available at* http://www.ca5uscourts.gov/OralArgumentRecordings.aspx.[7] Other circuits have agreed that the dismissal of an earlier-filed case will not prevent the first-to-file rule from operating. *See Grynberg*, 390 F.3d at 1279 n. 2 (finding that settlement of first-filed case was "not relevant" to whether it would preclude a subsequently-filed case, and concluding that later-filed case was barred under first-to-file rule); *Lujan*, 243 F.3d at 1188 (holding that so long as first-filed case was pending when second relator commenced claim, it was "pending" for first-to-file purposes and its subsequent dismissal would not preclude the application of first-to-file bar.)[8] "Dismissed or not," the first-filed case "promptly alerted the government to the essential facts of a fraudulent

---

[6] The Fifth Circuit "express[ed] no opinion" on whether a dismissal of a "sham" first-filed complaint for lack of any factual basis or on Rule 9(b) grounds would have preclusive effect over later-filed complaints under the first-to-file bar. *Branch*, 560 F.3d at 379. That comment has no bearing here, where *Rigsby* was voluntarily dismissed as to Allstate, where *Branch* was dismissed on first-to-file grounds as to Allstate, and where Denenea makes no allegation (nor could he) that either *Branch* or *Rigsby* is a sham.

[7] For ease of reference of the Court and the parties, Allstate has prepared a transcript of the Fifth Circuit oral argument based on the official recording. The transcript is attached hereto as Exhibit A (*see* pp. 3-5).

[8] *United States ex rel. Chovanec v. Apria Healthcare Group Inc.*, 606 F.3d 361 (7th Cir. 2010), held that the first-to-file rule may not apply if the first-filed case has been dismissed. However, *Chovanec* conflicts controlling Fifth Circuit law, as articulated in *Branch*, as well as with cases from other jurisdictions and the language and policy of the first-to-file rule.

scheme—thereby fulfilling a goal behind the first-to-file rule." *Lujan*, 243 F.3d at 1188.

　　*Third*, the language of the first-to-file rule itself makes clear that *Denenea* is barred due to the earlier-filed *Rigsby* and *Branch* actions, notwithstanding Allstate's dismissal from those cases.  Section 3730(b)(5) states, "When a person brings an action under this subsection, no person other than the Government may intervene *or bring a related action* based on the facts underlying [a] pending action."  31 U.S.C. § 3730(b)(5) (emphasis added).  This rule is explicitly keyed to when a relator "*bring*[s]"—that is, first files and commences—an action.  Denenea "brought" his action in May 2007, while two earlier-filed *qui tam* actions alleging the same fraud were "pending."  Under the plain language of the first-to-file rule, *Denenea* cannot proceed.  The language of the first-to-file rule is absolute and exception-free, and "courts have rejected offers to read any exception into the language."  *United States ex rel. Smith v. Yale-New Haven Hosp.*, 411 F. Supp. 2d 64, 75 (D. Conn. 2005).  Section 3730(b)(5) contains no exception allowing a later-filed case to proceed after the first-filed case is voluntarily dismissed (as *Rigsby* was with respect to Allstate) or dismissed on first-to-file grounds (as *Branch* was with respect to Allstate). This Court should decline to read into the first-to-file rule an exception that has no basis in the statutory text.  *See, e.g.*, *United States ex rel. Holmes v. Consumer Ins. Group*, 318 F.3d 1199, 1202 (10th Cir. 2003) (noting, in context of FCA jurisdictional provisions, that federal courts have limited jurisdiction and presumption is that no jurisdiction exists unless otherwise shown).

　　*Finally*, the policy behind the *qui tam* provisions of the FCA supports the continuing application of the first-to-file rule even after a first-filed case is dismissed.  The FCA's goals are served once the first relator puts the government on notice of an alleged fraud, as was done in both *Rigsby* and *Branch*.  The government investigated the allegations made by *Rigsby* and *Branch* for several months before declining to intervene in either case.  Order Denying Motion to

- 15 -

Lift Stay, *United States ex rel. Rigsby v. State Farm Ins. Co.*, No. 1: 06-cv-433, Dkt. 52 (S.D. Miss. filed Dec. 4, 2007) (RJN 9). The purpose of the first-to-file rule, ensuring "a race to the courthouse among eligible relators, which may . . . spur the prompt reporting of fraud," *LaCorte*, 149 F.3d at 234, was thus served. *Denenea* simply lost that race by being last to report the same alleged fraud to the government. The fact that Allstate was subsequently dismissed from those earlier-filed suits is irrelevant and should not allow *Denenea* to circumvent the first-to-file rule.

### B. The Court Lacks Subject Matter Jurisdiction Because *Denenea* Is Based On Public Disclosures And Denenea Is Not An Original Source

Separate and apart from the fact that *Denenea* is barred under the first-to-file rule, this Court also lacks jurisdiction over *Denenea* under the FCA's public disclosure bar. The FCA's public disclosure bar is another jurisdictional limit to *qui tam* actions that recognizes that "[o]nce the information is in the public domain, there is less need for a financial incentive to spur individuals into exposing frauds." *United States ex rel. Findley v. FPC-Boron Employees' Club*, 105 F.3d 675, 685 (D.C. Cir. 1997). The public disclosure bar prohibits a relator from bringing an action "based upon" allegations that were publicly disclosed before the action was filed unless the relator "is an original source" of the information. 31 U.S.C. § 3730(e)(4)(A).[9] The relator bears the burden on each of these issues. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009). If a relator who cannot show that he is an original source brings a *qui tam* suit based upon a public disclosure, the court must dismiss that suit for lack of subject matter jurisdiction. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 467-68 (2007).

---

[9] On March 23, 2010, the Patient Protection and Affordable Care Act amended Section 3730(e)(4). However, those amendments should not apply to alleged fraud occurring before the Act's enactment, and certainly not to cases pending prior to the Act's enactment, including *Denenea*, which was filed on May 4, 2007. *See Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 130 S.Ct. 1396, 1400 n.1 (2010) (stating that Act "makes no mention of retroactivity, which would be necessary for its application to pending cases given that it eliminates [the defendants'] claimed defense to a *qui tam* suit."). Thus, all references to Section 3730(e)(4) in this motion refer to the pre-amendment version of that section.

1. **The Fraudulent Scheme Alleged By *Denenea* Was Publicly Disclosed Long Before *Denenea* Was Filed**

Long before even the *initial* Denenea complaint was filed, allegations that Allstate and other insurers had engaged in a fraudulent loss-shifting scheme in handling Hurricane Katrina claims were publicly disclosed in Congressional and administrative investigations and testimony, judicial proceedings, and media coverage.  These disclosures make the same general allegation that *Denenea* now seeks to pursue against Allstate: namely, that WYO Companies, including Allstate, improperly inflated flood damage claims to pass costs onto the government in an effort to reduce their liability to pay for wind damage under homeowners' policies.  As Judge Vance found in *Branch*, the testimonies of Mr. Hunter and Representative Taylor, the *Cox* and *Fowler* lawsuits, and the various news articles about insurance claims handling after Katrina constitute public disclosures under Section 3730(e)(4) because their allegations were made in a "criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media," as required by the public disclosure bar.  31 U.S.C. § 3730(e)(4); *Branch*, 668 F. Supp. 2d at 789-91, 795.

Beyond these disclosures—which suffice to publicly disclose the allegations made by Denenea—the proceedings in the very cases from which Denenea obtained his information regarding Allstate's alleged misallocation of damages constitute public disclosures.  As with the *Cox* and *Fowler* lawsuits, the *Weiss*, *Shearman*, and *Majoue* suits, and the pleadings therein, are public disclosures under Section 3730(e)(4).  *See United States ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1517 (10th Cir. 1996) (holding that information disclosed through civil litigation is considered a public disclosure under Section 3730(e)(4)(A)).

Moreover, over two years before Denenea's FAC was filed, *Rigsby* and *Branch* were unsealed, and their allegations became public.  Notably, it was only after those cases were

- 17 -

unsealed that Denenea amended his complaint to mimic the allegations in those cases, asserting

"on information and belief" that there exists a broader scheme involving properties other than

those identified in his original complaint.  FAC ¶ 19.  This further demonstrates public

disclosure, as the allegations in *Rigsby* and *Branch* constitute additional public disclosures of

*Denenea's* duplicative loss-shifting allegations.  *See, e.g.*, *United States ex rel. McKenzie v.

Bellsouth Telecomm., Inc.*, 123 F.3d 935, 939-40 (6th Cir. 1997) (holding that previously filed

*qui tam* action was public disclosure of nearly-identical allegations in relator's suit).

### 2.    *Denenea* Is "Based Upon" Publicly Disclosed Allegations

It is also beyond dispute that *Denenea* is "based upon" the public disclosures discussed

above.  The majority of circuits hold that a *qui tam* action is "based upon publicly disclosed

allegations when the relator's allegations and the publicly disclosed allegations are ***substantially

similar***."  *Glaser*, 570 F.3d at 915 (emphasis added); *see also United States ex rel. Koerner v.

Crescent City E.M.S., Inc.*, 946 F. Supp. 447, 452 (E.D. La. 1996).  Under this analysis, it is

immaterial whether the relator actually obtained his information from those publicly disclosed

sources.  *United States ex rel. Doe v. Doe*, 960 F.2d 319, 324 (2d Cir. 1992).  As Judge Vance

concluded in *Branch,* "the Fifth Circuit would require only substantial similarity between the

allegations before the jurisdictional bar is invoked."  *Branch*, 668 F. Supp. 2d at 796.

A comparison of the *Rigsby*, *Branch*, and *Denenea* complaints shows that the publicly

disclosed allegations in *Rigsby* and *Branch* are substantially similar—if not practically

identical—to those in *Denenea's* FAC.  Namely, all allege that Allstate overstated flood damage

to properties with NFIP policies and, at the same time, understated the amount of wind damage

to those properties, which Allstate had to pay for itself.  FAC ¶¶ 11-12; *Rigsby* FAC ¶¶ 28, 33,

59-62; *Branch* FAC ¶¶ 4, 17.  As such, *Denenea's* FAC is "based upon" those allegations.

The same conclusion results from a comparison of *Denenea* to the prior public

disclosures, which contain accusations of fraud substantially similar to those alleged in *Denenea*,

as discussed above.  That not all these public disclosures identified Allstate by name is

irrelevant: "Industry-wide public disclosures bar *qui tam* actions against any defendant who is

directly identifiable from the public disclosures."  *United States ex rel. Gear v. Emergency Med.*

*Assoc. of Illinois, Inc.*, 436 F.3d 726, 729 (7th Cir. 2006).  Indeed, Judge Vance held that these

very same materials constitute public disclosures upon which *Branch's* allegations were "based."

Deciding the issue with respect to *Branch*, Judge Vance ruled that "the public disclosures have

placed the 'very essence of the allegations' into the public domain, and they are sufficient to

identify particular defendants.  The jurisdictional bar is thus implicated."  *Branch*, 668 F. Supp.

at 795.  The Court's holding that Branch's allegations were based on public disclosures applies

to Denenea's virtually identical allegations, which were made after *Branch* was filed.  Like

*Branch*, *Denenea* is "based upon" public disclosures pursuant to Section 3730(e)(4)(A).

Accordingly, this Court lacks jurisdiction over this action unless Denenea is an original source.

### 3.     Denenea Fails To Allege He Is An Original Source

Courts have no jurisdiction over a *qui tam* action based upon public disclosures unless the

relator is an original source of the information underlying every claim he brings.  *Rockwell,* 549

U.S. at 476; *Reagan*, 384 F.3d at 176-77.  There are two components to this "original source"

requirement.  First, the relator must show that he has "direct *and* independent knowledge of the

information on which the allegations are based."  31 U.S.C. § 3730(e)(4)(B) (emphasis added).

In other words, the relator must show both that (1) his information is direct—that is, that it

"derive[s] from the source without interruption or gained by the relator's own efforts rather than

learned second-hand through the efforts of others"—and (2) that it is independent, not derived

- 19 -

from public disclosures. *Reagan*, 384 F.3d at 177 (quotations and citation omitted). Second, the relator must demonstrate that he has "voluntarily provided the information to the government" before filing the *qui tam* action. 31 U.S.C. § 3730(e)(4)(B).

Denenea bears the burden of showing that he is an original source. *Kennard v. Comstock Resources, Inc.*, 363 F.3d 1039, 1044 (10th Cir. 2004). To meet that burden, he must provide more than an "unsupported, conclusory allegation." *Id.* Instead, he "must allege specific facts— as opposed to mere conclusions—showing exactly how and when . . . []he obtained direct and independent knowledge of the fraudulent acts alleged in the complaint and support those allegations with competent proof." *Reagan*, 274 F. Supp. 2d at 853, *quoting United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1162 (10th Cir. 1999).

Denenea has failed to allege ***any*** specific facts showing that he is an original source. The sum total of Denenea's original source allegation is as follows:

> As an attorney licensed to practice law in the State of Louisiana who represented the Weisses, Majoue, Shearman, Whelan, Richardson, Smith, and Johnson in connection with their homeowners insurance claims against Allstate, Denenea acquired and has direct and independent knowledge of the information on which the allegations set forth herein are based, and he voluntarily provided that information to the Government before filing this action.

FAC ¶ 18. These conclusory allegations are wholly insufficient. Denenea fails to allege how or when he obtained direct and independent information about the alleged false claims, as required to show original source status. *See Hafter*, 190 F.3d at 1162. Instead, his allegations simply track the language of the FCA's jurisdictional bar, and thus are insufficient to defeat a motion to dismiss. *See, e.g.*, *United States ex rel. Pritsker v. Sodexho, Inc.*, No. 03-6003, 2009 WL 579380 (E.D. Pa. Mar. 6, 2009) (finding insufficient relator's "bald[ ] assert[ions]" that merely tracked

the language of Section 3730(e)(4)); *Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice.").[10]

 Indeed, the sole fact alleged by Denenea in an effort to show original source status—that

he is an attorney who obtained his information in the course of representing homeowners against

Allstate—*negates* his status as an original source.  *See, e.g.*, *United States ex rel. Grayson v.*

*Advanced Management Technology, Inc.*, 221 F.3d 580, 583 (4th Cir. 2000) (holding that

attorneys were not original sources despite specialized experience and investigation in prior

proceeding, because they had no direct and independent knowledge of allegations); *United States*

*ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1160-61

(3d Cir. 1991) (holding that attorney was not original source because he obtained information

through discovery and from others in course of prior suit).  In fact, Denenea admits he has no

direct or independent knowledge of the broader fraudulent scheme he attempts to allege, because

it is only "on information and belief" that he claims that Allstate "knowingly and systematically"

engaged in a broader scheme involving properties other than those identified in the FAC.  FAC ¶

19.  "[A]n allegation 'on information and belief' is insufficient to meet the burden of

demonstrating 'direct and independent' knowledge," as is required by Section 3730(e)(4)(B).  *In*

*re Pharmaceutical Industry Average Wholesale Price Litigation*, 538 F. Supp. 2d 367, 385 (D.

Mass. 2008).

 Denenea also fails to plead any factual support for his conclusory assertion that he

voluntarily provided information to the government before filing suit.  Because this is a

prerequisite to the Court's jurisdiction, Denenea has the burden of establishing that he complied

---

[10] Denenea's conclusory allegations are inadequate to establish his original source status even under the standard applied by Judge Vance in *Branch*.  Denenea has failed to plead facts regarding the details of the examined properties or claims, and has failed to plead any facts showing how he obtained first-hand information independent of public disclosures.

with this requirement.  *See, e.g.*, *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (holding that because federal courts are of limited jurisdiction, plaintiff bears the burden o jurisdiction).  Voluntary disclosure to the government "must be demonstrated by specific facts indicating what was disclosed, when and to whom the disclosure was made, and what information was imparted.  Conclusory assertions that 'everything was provided,' or that 'we discussed everything,' or that 'I gave them everything they asked for,' are insufficient."  *In re Natural Gas Royalties Qui Tam Litigation*, 467 F. Supp. 2d 1117, 1202-03 (D. Wyo. 2006), *citing Hafter*, 190 F.3d at 1162-63.

### C.     The First Amended Complaint Does Not State A Claim For Which Relief Can Be Granted

Aside from its fundamental jurisdictional defects, *Denenea* must also be dismissed because it fails to plead facts sufficient to state a claim for which relief may be granted under Rules 9(b) and 12(b)(6).  Indeed, the FAC fails to meet even the liberal pleading standard of Rule 8, under which "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 129 S.Ct. at 1949.

Because they sound in fraud, actions brought under the FCA must meet the heightened pleading standard of Rule 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b); *see Grubbs*, 565 F.3d at 185; *United States ex rel. Dow v. Dow Chemical Co.*, 343 F.3d 325, 328 (5th Cir. 2003).  To plead fraud with particularity, a relator must include "the time, place and contents of the false representations."  *United States ex rel. Russell v. Epic Healthcare Management Group*, 193 F.3d 304, 308 (5th Cir. 1999) (quotations and citation omitted).  While Denenea need not plead exact dollar amounts, billing numbers, or dates of individual false submissions, if he cannot do so then he must allege the "***particular details*** of a scheme to submit false claims paired with reliable

- 22 -

indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190 (emphasis added).  That standard can be met by alleging "when the scheme occurred, those involved, its mechanics, an explanation of how the claims were false, and a description of the billing system." *Wagemann v. Doctor's Hospital of Slidell*, No. 09-3506, 2010 WL 3168087, at *4 (E.D. La. Aug. 6, 2010).

Denenea claims that Allstate violated Sections 3729(a)(1)(A) and (B) of the FCA, both of which require him to show that 1) there was a false statement or fraudulent course of conduct; 2) the defendant acted knowingly; 3) the fraud was material; and 4) the fraud caused the government to pay out money.  *See United States ex rel. Longhi v. Lithium Power Techs.*, 575 F.3d 458, 467 (5th Cir. 2009).  The FAC fails to allege any of the "particular details" necessary to support these elements.  For example, Denenea fails: 1) to describe the damage actually sustained to any of the properties; 2) to allege the amount of damage actually caused by wind or flood to any of the properties or that should have been claimed under the NFIP or homeowners policies; 3) to allege with particularity what claim amounts, descriptions, and documentation were submitted to the government or to specify exactly how those were false or fraudulent; 4) to allege when the fraud took place, particularly with respect to the identified properties; 5) to allege how the claims and records were submitted to the government; and 6) to allege what amounts, if any, were paid by the government as a direct result of the fraudulent claims.

Instead, Denenea merely alleges that Allstate "knowingly and systematically fabricated and falsified documents . . . which substantially inflated the amounts of these insureds' flood insurance claims at the expense of the Government" and "knowingly estimated Smith's and Johnson's losses utilizing substantially inflated replacement cost values for items comprising their flood insurance claims at the expense of the Government . . . ."  FAC ¶¶ 11-12.  Such

broad, general allegations lack the "particular details" required by the Fifth Circuit.  *Grubbs*, 565

F.3d at 190.  Notably, Denenea also fails to plead any "reliable indicia" that could lead to a

"strong inference" that false claims were actually submitted to the government.  *Id.*

      In short, Denenea has "done little more than to provide a cursory explanation of the

scheme's design."  *See Wagemann*, 2010 WL 3168087, at *5 (dismissing *qui tam* action under

Rule 9(b) where relator alleged only that hospital records were falsified so patients could remain

in hospital to receive cosmetic surgery).  Denenea has failed to allege the essential facts

underlying the alleged scheme.  That he alleged generally that falsified documents "***includ[ed]***

***but [were] not limited to*** proof of loss forms, flood narrative forms, WYO flood processing

request forms, NFIP preliminary report forms, property loss worksheets, ***and/or other***

documents, forms, and/or information . . . ," FAC ¶ 11, cannot save the FAC because that

allegation merely lists all the forms generally used in processing NFIP claims and does not

specifically identify what documents were falsified or how they were false.  *See, e.g.*, *Fiore v.*

*First American Title Ins. Co.*, No. 05-CV-474, 2005 WL 3434074, at *4 (S.D. Ill. Dec. 13, 2005)

(dismissing allegations that defendant misrepresented certain closing charges "including, but not

limited to, credit reports, tax service contracts to the [lender], flood certification fees, settlement

or closing fees, recording fees, wire transfer fees and delivery fees" because they failed to

demonstrate exactly what the misrepresentations were); *Pulphus v. Sullivan*, No. 02 C 5794,

2003 WL 1964333, at *10 (N.D. Ill. Apr. 28, 2003) (holding that allegations that defendants

made use of interstate wires "including but not limited to sending and/or receiving loan proceeds

through interstate wires and sending and/or receiving certain documents through interstate phone

(fax) lines" failed under Rule 9(b) because they did not specifically identify who, how, or when

these actions took place).  Likewise, the general allegation that Allstate fabricated water line

measurements—without additional details describing when, how, and to which properties that was done—is insufficient under Rule 9(b).  Without "particular details" describing various components of the alleged fraud with greater specificity than is in the FAC, *Denenea* cannot survive a motion to dismiss.  *See United States ex rel. Godfrey v. KBR, Inc.*, 360 Fed. Appx. 407, 411 (4th Cir. 2010) (dismissing *qui tam* action where relator failed to allege specific facts such as the amounts claimed and that should have been claimed on invoices to the government); *United States ex rel. Davis v. Lockheed Martin Corp.*, No. 4:09-CV-645-Y, 2010 WL 3239228, at *6 (N.D. Tex. Aug. 16, 2010) (dismissing *qui tam* action where relator failed to allege, among other things, details of submittal, amounts requested, amounts received, and form of claim).

## IV.    **CONCLUSION**

For the foregoing reasons, Defendant Allstate Insurance Company respectfully requests that the Court enter an order dismissing the First Amended Complaint.


Dated:   October 14, 2010                   Respectfully submitted,

                                            BARRASSO, USDIN, KUPPERMAN
                                            FREEMAN & SARVER, LLC

                                            /s/ Judy Y. Barrasso
                                            Judy Y. Barrasso, TA (2814)
                                            jbarrasso@barrassousdin.com
                                            909 Poydras Street, 24th Floor
                                            New Orleans, Louisiana  70112
                                            Telephone:  (504) 589-9700
                                            Facsimile:   (504) 589-9701

                                            Attorneys for Defendant,
                                            Allstate Insurance Company

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has this date been served upon all parties to this suit through counsel by filing into the Court's electronic filing system and, for non-participants, via electronic mail, this 14th day of October, 2010.


/s/ Judy Y. Barrasso
JUDY Y. BARRASSO