### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CIVIL ACTION** |
| *ex rel.* **JOHN H. DENENEA, JR.,** | * | |
| **Plaintiff/Relator** | * | **CASE NO. 07-2795** |
| | * | |
| **vs.** | * | **SECT. "R"** |
| | * | **JUDGE VANCE** |
| | * | |
| **ALLSTATE INSURANCE COMPANY,** | * | **MAG. DIV. 1,** |
| **Defendant** | * | **MAG. JUDGE SHUSHAN** |
| | * | |

**************************************************************************

### RELATOR'S MEMORANDUM IN OPPOSITION TO
### DEFENDANT ALLSTATE INSURANCE COMPANY'S MOTION TO DISMISS FOR
### LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO FED. R. CIV. P.
### 12(b)(1), 12(h)(3), 31 U.S.C. §§ 3730(b)(5), and 3730(e)(4), and MOTION TO DISMISS
### FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 9(b) and 12(b)(6)

MAY IT PLEASE THE COURT:

Relator, John H. Denenea, Jr. (Denenea), files this memorandum for the purpose of

opposing Allstate's complexly titled motion to dismiss. (Doc. 34). For the sake of clarity,

Allstate misidentifies Denenea as "Branch" in each end every subpart of its page and a half

motion. Additionally, Denenea is referred to in Allstate's prayer as the "Plaintiff." Again, for

the sake of clarity and the record, the United States of America is officially the plaintiff and

Denenea is the relator.

As this Court previously has noted within this exact context, "Judges are not like pigs,

hunting for truffles buried in briefs." *See United States ex rel. Branch Consultants v. Allstate Ins.

Co.,* 668 F. Supp. 2d 780, 789, (E.D La. 2009) quoting *United States v. Dunkel,* 927 F.2d 955,

956 (7th Cir.1991).

In the published opinion in *Branch* cited in the previous paragraph, this Court addressed almost each and every legal argument advanced by Allstate in its motion in the case *sub judice*. And if a Court in which an action is pending already has written extensively on certain legal topics, it is of little utility for a party to regurgitate repeatedly the Courts own words back to the Court, except where necessary.

A.     BACKGROUND

The False Claims Act "provide[s] for restitution to the government of money taken from it by fraud." *United States ex rel. Augustine v. Century Health Services, Inc.,* 289 F.3d 409, 413 (6th Cir.2002) (quoting *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 551, 63 S.Ct. 379, 87 L.Ed. 443 (1943)). Under the Act's *qui tam* provisions, a private individual may bring a civil action on behalf of the United States against persons who knowingly submit false or fraudulent claims to the government for payment in violation of 31 U.S.C. § 3729(a). *See* 31 U.S.C. §§ 3730(b)(d).

Before proceeding with the suit, a *qui tam* plaintiff must disclose to the government the information on which his or her claim is based. 31 U.S.C. § 3730(b)(2).  If the government chooses to intervene in the action, it assumes the role of lead prosecutor. *Id.;* 31 U.S.C. §3730(b)(4)(A), (c)(1). If the government declines to intervene, the *qui tam* plaintiff may serve the complaint on the defendant and proceed with the action on its own. 31 U.S.C. §3730(b)(4)(B). As an incentive to bring such claims, private plaintiffs suing on behalf of the government receive a portion of the funds recovered in a successful suit. *See* 31 U.S.C. §3730(d).

 Referencing certain FCA jurisprudence, Allstate essentially attempts to label Denenea as a parasitic late-comer by arguing that one of the purposes of the FCA is "preventing parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud." (Doc. 34 at page

11).  Of course, Allstate's parasite argument is directly undermined by the fact that the *Denenea* Compliant was filed (May 4, 2007) before both *Rigsby* (August 1, 2007) and *Branch* (May 18, 2007) were unsealed.  Denenea could not possibly have known about any other cases that Allstate suggests he was leaching upon when those cases were under a seal order.

B.      CONSOLIDATION

Denenea and Branch Consultants, through their respective counsel, have agreed recently to joinder and consolidation of their FCA lawsuits.  The parties intend to file a joint motion well in advance of the hearing of this and other similar motions scheduled for hearing on November 19, 2010.  As is readily apparent from the similarities of the legal arguments made by Allstate against each of these relators, consolidation might very well moot certain issues and will foster judicial expediency and economy as it relates to the claims against Allstate Insurance Company.

C.      FIRST-TO-FILE

Consolidation and joinder of this action with the *Branch* action would moot Allstate's "first to file" argument as *Denenea* relates to *Branch*.  Then, the only "first to file" issue left for this Court to address would be Branch's argument that *Rigsby* was a sham action and does not bar *Branch* from going forward.

31 U.S.C.A. Section 3730(b)(5) provides:

> When a person brings a [*qui tam* action], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

By its terms, this section "unambiguously establishes a first-to-file bar, preventing successive plaintiffs from bringing related actions based on the same underlying facts." *United States ex rel. Lujan v. Hughes Aircraft Co.,* 243 F.3d 1181, 1187 (9th Cir.2001); *see also United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.,* 149 F.3d 227, 232 (3d

Cir.1998). The first-to-file bar furthers the policy of the False Claims Act in that "[t]he first-filed claim provides the government notice of the essential facts of an alleged fraud, while the first-to-file bar stops repetitive claims." *Lujan,* 243 F.3d at 1187 (citing *LaCorte,* 149 F.3d at 233-34 (discussing legislative history)).

Consistent with truffles being buried in briefs, cases filed under the FCA are fraught with seemingly limitless procedural hurdles that cause incredible delay.  Memories, evidence, and the cases themselves do not generally improve over time.  Indeed, this case was filed nearly three and a half years ago, but not even a single witness's memory can be tested under oath any time in the near future.

The purpose of the 1986 Amendments to the False Claims Act, including Section 3730(b)(5), was to reduce the obstacles to qui tam suits, not to institute them.  One of the False Claim Act's primary purposes is to encourage individuals knowing of government-related fraud to come forward with that information.  By minimizing the obstacles faced by *qui tam* plaintiffs, this type of government "whistleblowing" will be further encouraged. *United States ex rel. Precision Co. v. Koch Indus. Inc.*, 31 F.3d 1015, 1019, n.7 (10th Cir. 1994), quoting *United States ex rel. Neher v. NEC Corp*., 11 F.3d 136, 139 (11th Cir. 1993).

Despite the fact that some have termed 31 U.S.C. §3730(b)(5) a "first to file rule," the courts have upheld the rights of multiple relators to pursue defendants in a consolidated action.  Some courts also have permitted multiple lawsuits to proceed on similar facts, particularly where the claimants or defendants vary among the cases.  By no means is a relator who was the first to file a lawsuit necessarily the only one who can pursue a False Claims Act case.  See False Claim Act: Whistleblower Litigation, Fifth Edition, James Helmers pp. 351-352.

Giving priority to the party that arrives at the courthouse first may not be giving priority to the party with the best, or the most, information. Neil V. Getnick et al., *The 'Multiple Relator' Phenomenon in the Qui Tam Law*, ANDREWS GOV'T CONT. LITIG. REP., May 20, 1998, at 13.

Despite some conflicts in the case law on this issue, Denenea must acknowledge the Fifth Circuit's position regarding the first to file bar. *United States ex rel. Branch Consultants v. Allstate Ins. Co*. 560 F.3d 371, 378 (5th Cir. 2009):

> We agree with these circuits that the applicability of § 3730(b)(5) should be determined under an "essential facts" or "material elements" standard. Accordingly, as long as the later-filed complaint alleges the same material or essential elements of fraud described in a pending *qui tam* action, §3730(b)(5)'s jurisdictional bar applies.

In initially affirming Branch's claims against Allstate, however, the Fifth Circuit concluded as follows:

> 2. Allstate
>
> For this same reason, we affirm the dismissal of Allstate, named in the *Rigsby* complaint. We recognize that only skeletal allegations are raised against Allstate in that case. We express no opinion on the as-yet-unpresented question of whether a dismissal for lack of any factual basis or on Rule 9(b) grounds in the *Rigsby* case would then permit a suit by Branch or any other person with knowledge of facts from suing Allstate without facing the first-to-file bar. In other words, if the "first-filed" case is essentially a sham, does it continue to be "first" after the court in that case dismisses it? The answer to that question should await a case in which it is squarely presented.

It would run counter to the 1986 Amendments to the FCA for a court to determine that an un-litigated, unresolved, case like *Rigsby* could protect a defendant like Allstate from having to address the merits because of some procedural Catch-22 created by a blind application of the so-called "first to file bar."  Theoretically, any time an FCA defendant were voluntarily dismissed (even without prejudice) without testing the sufficiency of the relator's claims (for whatever the

reasons(s)), the FCA defendant always could invoke the first to file bar in a later, legitimate action and never have to account for its conduct.  This creates a quasi *res judicata* where no claims have reached the merits.

In frankness to the Court, undersigned counsel does not fully grasp the Fifth Circuit's statements that "[a] suit by Branch or any other person with knowledge of facts from suing Allstate without facing the first-to-file bar." or "In other words, if the "first-filed" case is essentially a sham, does it continue to be "first" after the court in that case dismisses it? The answer to that question should await a case in which it is squarely presented."

One suggestion to the Court may be to address the query by the Fifth Circuit by referencing a recent Seventh Circuit decision on the issue of first-to-file.  In *United States ex rel. Chovanec v. Apria Healthcare Group, Inc.*, 606 F.3d 361 (7th Cir. 2010), the Court interpreted the pertinent language of section 3730(b)(5) and focused on the requirement of "the pending action."   Although the relator's case was dismissed without prejudice to re-file a new case, the significant lack of any "pending action" removed the first-to-file bar.  In a technical sense, once Allstate was dismissed from *Rigsby* on June 16, 2008, there were no FCA Katrina claims pending against Allstate, other than *Denenea*.   The only other resolution of the Fifth's Circuit's query regarding Allstate is for a full examination of the *Rigsby* dismissal.

D.     MUTUALLY EXCLUSIVE CLAIMS

Under the first to file rule, there is no arguable position Allstate can take with regard to Denenea's claims that Allstate fabricated flood forms on total loss (slab) properties, and contents claims under the NFIP policies.  Branch is in agreement that its case does not encompass the fabrication and or falsifying of Hurricane Katrina contents claims for submission to the United States Government.  Denenea submits that Branch's universe of claims do not encompass those

total loss (slab) properties, and those specifically identifiable properties do not overlap.  There

may remain a question as to whether Allstate's manipulated and inflated flood claim pricing

database may overlap between *Denenea* and *Branch*, but that is an issue to be resolved between

the relators.

E.  JURISDICTION

As an initial inquiry on the question of this courts jurisdiction, Denenea questions

whether the Allstate's challenge to jurisdiction on issues of public disclosure and original source

can properly be made in a motion to dismiss. "Questions of subject matter jurisdiction and the

merits will normally be considered intertwined where the statute provides both the basis of

federal court subject matter jurisdiction and the cause of action." *Clark v. Tarrant County*, 798

F.2d 736, 742 (5th Cir.1986); see also *Eubanks v. McCotter*, 802 F.2d 790, 792-93 (5th

Cir.1986) ("When the basis of federal jurisdiction is intertwined with the plaintiff's federal cause

of action, the court should assume jurisdiction over the case and decide the case on the merits.").

In this case the question of subject matter jurisdiction and the merits are intertwined

because "the defendant's challenge to the court's jurisdiction is also a challenge to the existence

of a federal cause of action." *Williamson v. Tucker*, 645 F.2d 404, 415-16 (5th Cir.1981), *cert.*

*denied*, 454 U.S. 897, 102 S.Ct. 396 (1981). (citing *Bell v. Hood*, 327 U.S. 678, 66 S.Ct. 773, 90

L.Ed. 939 (1946)). Where the issues are intertwined the proper course of action for the district

court is "to find that jurisdiction exist[s] and deal with the merits of the case." *Williamson*, 645

F.2d at 415.

In this case where the issues are intertwined and where the defendants have interjected

numerous extra-judicial materials raising factual issues, the jurisdictional issue should be decided

on the merits. As a precautionary measure, Denenea has attached a Declaration of facts relevant to the issues presented herein. (Exhibit A).

1. Public Disclosure

In *U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 668 F.Supp.2d 780 (E.D.La. 2009), this Court analyzed thoroughly and wrote extensively on the issue of whether there was a public disclosure of the essential elements of the false claim made by Branch. This Court found that based on several decisions and the sheer volume of material disclosed in the public arena, it favored the finding that the allegations were publicly disclosed under the FCA.

It again should be noted that the claims in this matter involve one defendant, Allstate, and multiple allegations of fraud. Branch makes more generalized allegations of over billing flood claims and under billing wind claims. The allegations made in the present case are specific to the forms required by the NFIP for payment of flood benefits. These forms were completed with fabricated information and data. In addition, Allstate's damage calculating computer program was used with manipulated databases where a flood claim would contain inflated unit costs for repair, and when using the same program on the same properties, the computer program would use reduced unit costs when calculating wind damage.

These allegations are not generalized over billing allegations as a result of relaxed standards for submitting flood claims. Denenea's allegations are specific to manufactured information on federal forms where Allstate sought and obtained the payment of federal dollars.

Denenea would suggest that this Court reconsider the application of the decisions of *Cooper v. Blue Cross & Blue Shield of Fla.*, 19 F.3d 562 (11th Cir.1994), and *United States ex*

*rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645 (D.C.Cir.1994). This Court explained the facts and holding in *Cooper*,

> In that case, the relator was a "working aged" public employee who qualified for both Medicare and the Federal Employees Health Benefits Program, which was administered by the defendant. When a beneficiary submitted a claim for medical bills to the defendant, the defendant would typically return them with instructions to submit them to Medicare first. After discovering that the defendant was required to pay on his claims before the balance was sent to Medicare, the relator filed suit under the FCA. In response, defendant argued that the allegations were publicly disclosed by a number of materials that mentioned similar activities to the ones alleged by the relator. Some of these materials mentioned the defendant by name and others made general allegations of fraud against the healthcare industry.

> In its public-disclosure analysis, the court 'consider[ed] it crucial whether [defendant] was mentioned by name or otherwise specifically identified in public disclosures,' and held that '[t]he allegations of widespread ... fraud in sources in which [defendant] was not specifically named or otherwise directly identified are insufficient to trigger the jurisdictional bar.' The court went on to note that

>> [r]equiring that allegations specific to a particular defendant be publicly disclosed before finding the action potentially barred encourages private citizen involvement and increases the chances that every instance of specific fraud will be revealed. To hold otherwise would preclude any qui tam suit once widespread-but not universal-fraud in an industry was revealed. The government often knows on a general level that fraud is taking place and that it, and the taxpayers, are losing money. But it has difficulty identifying all of the individual actors engaged in the fraudulent activity.

> The court further found that a disclosure that mentioned the potential for conflicts of interest and specifically referred to the defendant did not qualify as a public disclosure because there was no allegation that the defendant engaged in wrongdoing. The court ultimately did find a public disclosure in another scenario because the defendant was mentioned in a House subcommittee hearing on industry-wide fraud at which the defendant's counsel was present. (Citations omitted).

The present case is on all fours with *Cooper*. The allegations made herein are solely against one defendant, Allstate. As in *Cooper*, the generalized suggestions of fraud made in the various sources listed by Allstate failed to mention Allstate specifically by name. Allstate also suggests that the case of *Cox v. Nationwide Mut. Ins. Co.*, No. 1:05-cv-436, Dkt. 1 (S.D. Miss.

filed Sept. 20, 2005), presented a public disclosure of the allegations of fraud presented by Denenea.  A simple reading of the *Cox* petition reveals the same "generalized suggestion" of denying wind claims based on the insurer's flood exclusions, and thereby passing wind claims onto the flood program.  The petition is not specific to Allstate as it includes every major insurer in the State of Mississippi in a class action proceeding.  In fact, the *Cox* matter not only alleged unfair trade practices against all of the insurers in Mississippi, but also included assertions that the creation of Katrina was the result of global warming caused by years of oil and gas development, production and refining.  *Cox* was later transformed into the global warming case of *Comer v. Murphy Oil USA*, 607 F.3d 1049 (5th Cir. 2010).

Without a more specific description of the purported disclosures in *Cox*, those allegations can only be viewed as similar generalized suggestions identified in *Cooper* as insufficient to trigger a public disclosure. Although the *Cox* matter may have mentioned Allstate, it should "not qualify as a public disclosure because there was no allegation that the defendant engaged in wrongdoing," and Allstate certainly has not shown such specific allegations.  Merely because certain litigants suggested general allegations of passing wind claims on as flood damage, those matters did not suggest wrongdoing as alleged herein, and do not rise to the level of a public disclosure.

On the issue of public disclosure the *Quinn* Court explained,

Recognizing that the task of determining whether 'allegations or transactions' have been 'public[ly] disclos[ed]' will never be cut-and-dried, we nonetheless are confident in this case that the information put in the public domain by the discovery filing did not present so clear or substantial an indication of foul play as to qualify as either an allegation of fraud or a fraudulent transaction upon which a qui tam suit could be based.

Allstate contends that the presentation of the flood documents and information in the case of *Weiss v. Allstate,* No. 2:06-cv-3774, Dkt. 1 (E.D. La. filed July 17, 2006) (a matter tried

before this Court), and other Allstate cases where Denenea represented Allstate insureds, amounted to a public disclosure in civil litigation.  To accept that position would necessarily require that even the most knowledgeable observer would have recognized the fraudulent transactions when presented.  Had the "allegations and transactions" shown in the fabricated flood forms risen to the level of "clear indication of foul play," certainly this Court, which heard the supposed allegations and transactions of fraud at the *Weiss* trial, would have taken affirmative action and alerted authorities.

The information presented at the *Weiss* trial, and in the exchange of discovery in the other Allstate matters handled by Denenea, were simply pieces to a larger puzzle of which no other "private citizen" had knowledge. Indeed, the touchstone of a public disclosure is determined where data and documentation was not readily available to others.  See *United States ex rel. John Doe v. John Doe Corp.*, 960 F.2d 318, 319 (2nd Cir.1992).  No one other than Denenea had the access and the independent knowledge of the falsified documents and data within these government forms, or the manipulated databases in Allstate's computer programs.

Defendants also cite *United States ex rel. Ramseyer v. Century Healthcare Corp.,* 90 F.3d 1514 (10th Cir. 1996), as holding that information disclosed through civil litigation is considered a public disclosure under Section 3730(e)(4)(A).  A simple reading of *Ramseyer* reveals that the public disclosure had nothing to do with any civil litigation, but that the disclosure arose out of a State audit of a healthcare company's day treatment program.  For that reason *Ramseyer* does not support defendant's position.

Similar to the present motion, where Allstate has bombarded this Court with materials outside the pleadings, the *Ramseyer* court did recognize that,

> [the] motion to dismiss did not simply attack the facial validity of the complaint;
> rather, it raised a factual challenge to the existence of subject matter jurisdiction.

That is, defendants argued that plaintiff's allegations of fraud were based upon publicly disclosed information and in support of this factual claim tendered to the district court evidence outside the pleadings. The district court treated defendants' motion as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). However, because the jurisdictional question was intertwined with the merits, and because the court relied on affidavits and other evidentiary material submitted by the parties, defendants' motion to dismiss should have been treated as one for summary judgment under Rule 56(c). *Ramseyer*, citing *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir.1992).

In this case Denenea is presented with the same challenge.  An opposition is required to the defendant's factual information that is directly determinative of subject matter jurisdiction, but Denenea can only do so by referring the Court to the pleadings filed.  Because Denenea is severely prejudiced by such a large amount of extra judicial material which bears directly on the issue of subject matter jurisdiction, the declaration of Denenea is submitted for a fair and complete response. (Exhibit A).  See *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156 (10th Cir. 1999) (where the court of appeals relied upon an affidavit filed by relator as well as the disclosure statement presented to the United States in making a *de novo* review of subject matter jurisdiction).

2.  Based Upon

While Denenea suggests that there was no true "public disclosure" of the allegations and transactions of the fraud presented herein, whether the allegations in the complaint were "based upon" any purported public disclosure must also be addressed.  As this Court explained in *Branch, supra*, at 795, "The existence of a public disclosure does not automatically divest the court of jurisdiction over the suit. The FCA action must also be 'based upon' the public disclosure. A suit that is even partially based upon a public disclosure is jurisdictionally barred."

Once again, this Court thoughtfully reviewed and weighed the pertinent cases that addressed the issue of whether the allegations of fraud are considered "based upon" the public disclosure, and this Court concluded that,

> [T]he Fifth Circuit would require only substantial similarity between the allegations before the jurisdictional bar is invoked. Here, there is no doubt that the allegations in the public disclosures are substantially similar to those in Branch's complaint. Both allege that, after the proof-of-loss standards were temporarily relaxed during the recovery from Hurricane Katrina, WYO insurers overstated flood damage to properties with NFIP policies and understated the amount of damage resulting from causes of loss for which the insurers had to pay themselves. *Branch, supra,* at 796-97.

This Court then found that Branch's suit was based upon the public disclosures. In contrast, the present allegations are not a list of flood claims over billed because of relaxed standards for submitting flood claims. Even if the present allegations resulted from relaxed proofs of loss, those relaxed standards did not allow WYO insurers to fabricate the supporting data necessary to obtain payment for flood claims. The allegations made here are specific to fabricated information on federal forms where Allstate sought and obtained the payment of federal dollars. The allegations of Denenea also reveal that Allstate maintained two separate databases for unit costs for damage to properties from the hurricane: one for flood and the United States Treasury; and one for wind and Allstate. None of Denenea's specific allegations were offered in any disclosures, hearings, or media releases, and were not under any assessment "based upon" any public disclosures.

In the case of in *United States ex rel. Fried v. West Independent School District*, 527 F.3d 439, 441-42 (5th Cir.2008), the Fifth Circuit addressed the "based upon" question of the FCA, and explained,

> The False Claims Act is designed to permit 'suits by private parties on behalf of the United States against anyone submitting a false claim to the government.' The Act 'promot[es] private citizen involvement in exposing fraud against the

government,' while at the same time, 'prevent[s] parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud.' (citations omitted).

To prevent 'parasitic suits' the Act prohibits a relator from pursuing an action-and strips federal courts of subject matter jurisdiction over the claim-when the allegations of fraud are based on information that has been publicly disclosed in a 'criminal, civil, or administrative hearing, in a congressional, administrative, or Governmental Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.' Thus, a relator is prohibited from bringing a claim under the FCA when the claim is 'based on' information that has been 'publicly disclosed' unless the relator is an 'original source' of the information. (citations omitted).

In finding that the relator's allegations were based on publicly disclosed information, the court in *Fried* considered various government reports and investigations that were specific to the exact allegations and complaints that were made by Fried.  The Court determined that,

[M]uch of Fried's information duplicates what was uncovered in governmental investigations. Further, a large section of the evidentiary basis of Fried's claims is the information received pursuant to the Texas Public Information Act (the Texas equivalent to the federal Freedom of Information Act). This court has explicitly stated that a response to a public records request constitutes a "public disclosure" under the FCA.  In fact, we have held that if a qui tam action is 'even partly based upon public allegations or transactions' then the jurisdictional bar applies. *Fried* at 442. (citations omitted).

In the present case, the allegations of fraud by Allstate were not based on any disclosures other than those actually made by Denenea.  As this Court explained, "[t]he materials publicly disclose allegations of the *potential* for fraud in the post-Katrina circumstances by a large number of insurance companies." *Branch*, 668 F.Supp.2d at 791 (emphasis the courts). The generalized "potential for fraud" was suggested in the considerable hearings and materials in news media, but none of that information can be identified with the materials, documentation and allegations made by Denenea in the present case.   Where none of the generalized materials form the basis of the allegations made by Denenea, the allegations made herein were not based upon

14

any "publicly disclosed" information as suggested by Allstate, or listed and expressed in this Court's examples in *Branch, supra*.

Additionally, the underlying policy behind the "based upon" doctrine in *Fried*, to "prevent parasitic suits by opportunistic late-comers who add nothing to the exposure of fraud," is not breached in Denenea's allegations. The specific falsified documents and manipulated databases do, in fact, add definite examples of Allstate's fraudulent flood claim practices. The factual basis for the claims of Denenea herein are not foreclosed under the *Fried* analysis, and should not be considered "based upon" any publicly disclosed information.

3. Original Source

In *Branch*, this court acknowledged the *Quinn* case on the issue of original source in addition to the issue of public disclosure. This Court explained the *Quinn* facts where,

> [A] relator brought suit claiming that a labor arbitrator had billed the government for arbitral activities on days when he had not actually per-formed any. The relator, the employer in the labor dispute, discovered this state of affairs in an earlier suit it brought to challenge the arbitration, during the course of which the arbitrator's pay vouchers were produced in discovery. The relator alleged that the arbitrator had overbilled the government, but the court did not reach this claim. In the FCA suit it brought soon after, the relator claimed that it had investigated the matter after seeing the vouchers and discovered the fraudulent overbilling. The D.C. Circuit found the relator to be an original source of the information, even though both the materials and the allegation had been made public in the previous litigation. *Branch, supra,* at 799-800.

A further reading of the *Quinn* decision also reveals striking similarities to the present case. On the issue of original source, the *Quinn* Court explained,

> [t]he pay vouchers and phone records did not themselves suffice to indicate fraud, Springfield [the relator] had to have bridged the gap by its own efforts and experience, which in this case included personal knowledge of the arbitration proceedings and interviews with individuals and businesses identified in the telephone records. Springfield started with innocuous public information; it completed the equation with information independent of any preexisting public disclosure. As such, Springfield is an original source within the meaning of the

jurisdictional bar, and federal courts are not statutorily precluded from entertaining its suit. *Quinn* at 657.

Denenea's materials and allegations present the exact sequence of events as shown in *Quinn* in establishing his original source status for the allegations of fraud.  The materials and testimony initially revealed unusual circumstances on the presentation of the flood forms and underlying data.   Utilizing that information and with the knowledge of the claims process, discussing the materials with individuals, understanding the required data for obtaining flood benefits, and comparing the consistent method in the handling the flood claims and reports with other cases handled by Denenea, he bridged the gap in concluding the existence of fraud.

Additionally, the case of *United States ex rel. Dick v. Long Island Lighting Co.,* 912 F.2d 13 (2nd Cir. 1990), is helpful in the original source analysis.  Although *Long Island Lighting* has not been followed as a basis of restricting the "original source" determination, its analysis and unique facts are supportive of Denenea's status as an original source.  In *Long Island Lighting*, the Court explained,

> A straightforward reading of § 3730(e)(4)(B) indicates that to be an 'original source' a qui tam plaintiff must (1) have direct and independent knowledge of the information on which the allegations are based, and (2) have voluntarily provided such information to the government prior to filing suit. A close textual analysis combined with a review of the legislative history convinces us that under § 3730(e)(4)(A) there is an additional requirement that a qui tam plaintiff must meet in order to be considered an 'original source,' namely, a plaintiff also *must have directly or indirectly been a source to the entity that publicly disclosed the allegations on which a suit is based*. *Id*. at 16. (emphasis added).

The additional feature for "original source," to be a source of the disclosure, is the exact characteristic of the present relator in Denenea.  In this case Denenea was a source that disclosed the material in a civil proceeding.  As counsel in *Weiss* it was disclosed that certain NFIP required information was fabricated by Allstate claims persons, other than the adjusters who inspected the property.  The Court can take judicial notice of the proceedings and trial testimony

of the Allstate adjusters that provided a peak underneath the Allstate flood claim curtain.  The underlying documents, portions of which were presented in the disclosure in the representation of *Weiss*, began the inquiry by Denenea into the Allstate flood claims process.  This falsified data in the NFIP forms was repeated in certain types of cases all handled by Denenea, and uncovered through his personal knowledge and additional investigation of the materials, documents and witnesses.

Allstate also suggests that based on Denenea's status as an attorney he is *per se* eliminated as an "original source." Citing *Grayson v. Advanced Mgmt. Tech., Inc*., 221 F.3d 580, 583 (4th Cir. 2000).  This Court in *Branch* below correctly addressed the core holding in *Grayson* that the relator was not an original source as he merely verified previously disclosed allegations and theories.  The *Grayson* case did not turn on the relator's status as an attorney.  The *Grayson* relator was not an original source because he did not have direct and independent knowledge of the information supporting the claims of fraud.

In *Grayson* a competing corporation to the relator's client had lodged and formally filed an administrative complaint on a certain "bait and switch" theory.  The relator had learned of the theory from clients who had previously received a copy of the administrative complaint.  The allegations underlying the relator's *qui tam* complaint were directly based on the information formally filed in a public record, and then provided to the attorneys from their client.

In the present case, the falsified documents and manipulated databases were never part of any formal complaint or submission to any administrative agency or court prior to them being tendered by Denenea.  The Allstate NFIP documents and claim summary unit costs were never reviewed by any homeowner/client, and if they were to be reviewed, no client/homeowner would understand the significance of the underlying NFIP form entries or database discrepancies.

Indeed in the sections of the federal forms requiring flood levels and waterlines, the homeowners themselves had no knowledge of that information because it was falsely created by Allstate. If the issue of "original source" is to be foreclosed purely based on Denenea's status as an attorney, then the court should so rule. To properly resolve the issue under the *Grayson* analysis, however, the issue should be resolved based on Denenea's "direct and independent" knowledge of the information upon which the allegations are based.

4.     Delivery To The Government

This Court also explained that to qualify as an original source, the relator must not only demonstrate that he has direct and independent knowledge of the information upon which the allegations are based, but also he must, "demonstrate that he or she has 'voluntarily provided the information to the Government before filing' his or her qui tam action." *Branch*, 668 F.Supp.2d at 797, and 31 U.S.C. § 3730(e)(4)(B). Allstate suggests that the complaint lacks specificity of how Denenea provided the information to the Government. While Allstate's assertions on this issue are again best addressed outside the limited nature of a motion to dismiss, see *Williamson v. Tucker, supra*, Denenea has attached a summary Declaration outlining the chronology of his acquiring knowledge of the underlying information, and his voluntarily providing the information to the United State Government prior to the filing of the False Claims Complaint. (Exhibit A).

F.     PLEADINGS ARE SUFFICIENT

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint, not its merits. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering Allstate's motion, the court should accept as true all well-pleaded allegations, and draw all reasonable inferences in Denenea's favor. *Tamayo v. Blagojevich,* 526 F.3d 1074, 1081 (7th Cir. 2008).

Factual allegations in the complaint must be sufficient to state a claim for relief that is plausible on its face, rather than merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). A claim is facially plausible when the factual allegations allow the court to draw reasonable inferences that Allstate is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Generally, a complaint need only provide a short and plain statement giving defendants fair notice of the nature and basis of each claim. Fed. R. Civ. P. 8(a)(2); *Twombly*, 550 U.S. at 554-55. The Fifth Circuit has held that Rule 9(b)'s standards are relaxed to an extent when the facts relating to the alleged fraud are particularly within the defendant's knowledge. *United States ex rel. Russell v. Epic Healthcare Management Group*, 193 F.3d 304, 308 (5th Cir. 1999). In such cases, the fraud may be pleaded on information and belief, as long as the plaintiff sets forth the factual basis for his belief. *Id.* Plaintiffs proceeding under the FCA must link specific allegations of fraud to claims for government payment. *Garst v. Lockheed-Martin Corp.,* 328 F.3d 374, 378 (7th Cir. 2003).

The FCA imposes civil liability on any person who "knowingly presents, or causes to be presented . . . a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1). To state a claim under this section, Denenea must allege: (1) there was a false or fraudulent claim; (2) Allstate knew the claim was false; and (3) Allstate presented the claim or caused it to be presented to the United States for payment or approval. *United States ex rel. Fowler v. Caremark RX, LLC,* 496 F.3d 730, 740-41 (7th Cir. 2007).

The FCA also imposes liability on one who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2). Under this provision, Denenea must allege that: (1)

Allstate made a statement to receive money from the government; (2) the statement was false; and (3) Allstate knew it was false. *Fowler,* 496 F.3d at 741. Because Denenea's claims are premised upon a false certification of statutory or regulatory compliance, he must also allege that the certification was a condition of or prerequisite to payment by the government. *United States ex rel. Crews v. NCS Healthcare of Ill., Inc.* 460 F.3d 853, 858 (7th Cir. 2006); *Gross,* 415 F.3d at 604.

Denenea's first amended complaint is sufficient to satisfy Rule 9(b)'s heightened pleading standard. A plaintiff who pleads a fraudulent scheme involving numerous transactions over a period of years need not plead specifics with respect to every instance of fraud, but he must at least provide representative examples. *United States ex rel. Bledsoe v. Comm. Health Sys., Inc.*, 501 F.3d 493, 509-10 (6th Cir. 2007); *United States v. Ortho-McNeil Pharm., Inc.* No. 03 C 8239, 2007 WL 2091185, at * 3 (N.D. Ill. July 20, 2007) (Kendall, J.). In addition to outlining the allegedly fraudulent schemes, Denenea provides concrete examples, identifying the individual properties involved, the relevant instance, which is the post-Katrina time frame, and the method of how Allstate fabricated the documentation in order to obtain flood payments under the NFIP. Denenea also links the allegations of fraud to particular forms and reports submitted by Allstate which include flood narrative forms, WYO Flood Processing Request forms, proof of loss forms, NFIP preliminary report forms, and property loss worksheets. Rule 9(b)'s pleading standard serves to "assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Ackerman v. Nw. Mut. Life Ins. Co.,* 172 F.3d 467, 69 (7th Cir. 1999). Denenea asserts that his allegations are pled with enough particularity to satisfy the substance and purpose of Rule 9(b).

Denenea's allegations in the First Amended Complaint raise questions of fact not appropriate for resolution on a motion to dismiss.  Denenea's factual allegations surrounding Allstate's conduct are sufficient for the court to reasonably infer Allstate is liable for the alleged misconduct.  *Iqbal,* 129 S.Ct. at 1949.  Viewed in light most favorable to Denenea, Allstate's practices could reasonably be construed as explicit efforts to have claims paid by the Government as flood insurance claims while at the same time enriching Allstate by eliminating or substantially deflating its insureds' private homeowners wind claims.

To state a claim under § 3729(a)(1), Denenea must allege that Allstate made a false claim to the government, knowing the claim to be false.  To state a claim under §3729(a)(2), Denenea must allege that Allstate made a false statement to the government in order to obtain payment for a claim, knowing the statement to be false, and that the statement was a condition of payment. Denenea's theory is that Allstate, through its authority pursuant to the Write Your Own (WYO) program, fabricated reports to reflect that the subject properties were destroyed as a result of flood conditions, so that the Government would be responsible for the loss payments.  This would allow Allstate's exposure for wind damage to be reduced. Allstate also substantially inflated replacement cost values for items comprising their flood insurance claims, while at the same time deflating replacement cost values for identical items comprising the homeowner's claims.

To adequately state an FCA violation based upon a false certification of statutory or regulatory compliance, the relator must allege that the certification was a condition of or prerequisite to payment by the government.  *Crews,* 460 F.3d at 858; *Gross,* 415 F.3d at 604. Denenea alleges that government payment to NFIP policyholders was conditioned upon the express certifications in the various NFIP/FEMA forms and reports produced and submitted by

Allstate. Throughout the first amended complaint, Denenea alleges that the submission of the various fabricated portions of the flood documents were material to the government's decision to pay the policyholders' claims.  Denenea is not required to prove his case at this pleading stage, and the first amended complaint is sufficient so long as the factual allegations and reasonable inferences plausibly suggest that Denenea has a right to relief.  *EEOC v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776 (7th Cir. 2007).  Denenea submits that he has sufficiently alleged that the submission of the various flood documents by Allstate to the Government is a required condition for the government to make payment on a flood loss.

The FCA imposes liability on a person who "knowingly presents, or causes to be presented . . . a false or fraudulent claim for payment or approval" or makes *"knowingly* makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved.." 31 U.S.C. § 3729(a)(1) and (2) (emphasis added).  A person acts knowingly when he has actual knowledge of the information or acts in deliberate ignorance or reckless disregard of the truth or falsity of the information.  31 U.S.C. § 3729(b).  No proof or specific intent to defraud is required.  *Id.* The statute sets a fairly low standard with respect to the necessary intent.  *United States ex rel. Chandler v. Cook County, Ill.,* 277 F.3d 969, 976 (7th Cir. 2002).  Although allegations of fraud must be pled with particularity, knowledge may be averred generally as long as there is some basis for believing the plaintiff could prove *scienter*.  Fed. R. Civ. P.9(b); *DeLeo v. Ernst & Young,* 901 F.2d 624, 629 (7th Cir. 1990).

Viewed in light most favorable to Denenea, the allegations provide a sufficient basis to infer that Allstate possessed the necessary intent required for liability under the FCA.  Allstate created an overall system and process of fabricating data and information necessary to obtain federal flood benefits, including but not limited to a pattern and practice of knowingly and

systematically fabricating waterline measurements on and in homes that no longer existed, as well as creating an inflated flood pricing database for exaggerated payments from the Government.  Allstate engaged in a fraudulent scheme to submit and to cause to be submitted to the Government a series of false claim, records and statements fabricating flood losses where none existed and substantially inflated the amounts of its insureds' flood insurance claims at the expense of the Government, while at the same time substantially deflating its insureds' homeowners claims.

The first amended complaint seeks to hold Allstate liable under 31 U.S.C. §3729(a)(2).  This section penalizes any person "who knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."  31 U.S.C. § 3729(a)(2).  Denenea has stated in his original and first amended complaint how Allstate fabricated the various flood form requirements, as well as manipulated the computer databases to increase the flood pricing dramatically above the unit costs for that of their wind (homeowners) prices with the resulting overpayment by the United States government.  In the event the court determines that the allegations made by Denenea are somehow insufficient, Denenea requests leave to allow for an amendment under Rule 15.

G.    CONCLUSION

The relator intends to consolidate this matter with the Branch relator, which may avoid additional judicial expense as to any potential conflicts on first to file issues between Denenea and Branch.  There still exists the issue of first to file as to the present case and *Rigsby*; however, that issue is either resolved under recent jurisprudence, or should be addressed on a full hearing on the merits of the status of the *Rigsby* case pertaining to Allstate.  The remainder of the motion should be denied for the reasons stated, or that the motion should be converted to a full motion

for summary judgment allowing for the full supporting facts to be submitted for this courts consideration.   The relator therefore suggests that the motions filed by Allstate be denied.

**RESPECTFULLY SUBMITTED,**

*/s/ Richard C. Trahant*

_____
**RICHARD C. TRAHANT (Bar No. 22653) (T.A.)**
**ATTORNEY AT LAW**
**2908 Hessmer Avenue**
**Metairie, Louisiana  70002**
**Telephone:  (504) 780-9891**
**Facsimile:  (504) 780-7741**
**Email:  trahant@networktel.net**

        **- and -**

**JACK E. MORRIS (Bar No. 22539)**
**ATTORNEY AT LAW**
**4051 Veterans Boulevard, Suite 208**
**Metairie, Louisiana  70002**
**Telephone:  (504) 454-2769**
**Facsimile:  (504) 454-3855**
**Email:  jem@jemorrislaw.com**

        **- and -**

**BRIAN G. SHEARMAN (Bar No. 19151)**
**SHEARMAN - DENENEA, L.L.C.**
**4240 Canal Street**
**New Orleans, Louisiana 70119**
**Telephone: (504) 304-4582**
**Facsimile: (504) 304-4587**
**Email: bshearman@midcitylaw.com**

*Attorneys for Relator,*
*John H. Denenea, Jr.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of November, 2010, I electronically filed the foregoing with the Clerk of court by using the CM/ECF system which will send a notice of electronic filing to all listed counsel in the ECF system.

I further certify that there are no non-CMECF participants in this matter.

*/s/ Richard C. Trahant*
_____

**RICHARD C. TRAHANT**